**Donna L. RAMS, Plaintiff,**

v.

**Shirley CHATER, Commissioner of Social Security, Defendant.**

**No. Civ.A. 97–10069–REK.**

United States District Court,
D. Massachusetts.

Dec. 11, 1997.

Lewis S. Victor, Victor, Raphel & Gillis, Brockton, MA, for Plaintiff.

Anita Johnson, United States Attorney's Office, Boston, MA, for Defendant.

## Opinion

KEETON, District Judge.

Plaintiff Donna L. Rams seeks review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security (the Commissioner) denying her claim for Social Security Disability Insurance benefits.

Now before the court are:

(1) The Commissioner's Motion for Order Affirming the Decision of the Commissioner, with a supporting memorandum (Docket No. 17, filed July 29, 1997).

(2) Plaintiff's Motion to Reverse Decision of the Commissioner, with a supporting memorandum (Docket Nos. 4 and 5, filed March 26, 1997).

For the reasons stated below, I conclude that the Commissioner's decision is not supported by substantial evidence. Accordingly, the decision is reversed and remanded to the Commissioner for decision in accordance with this opinion and applicable law.

### I. *Procedural and Factual Background*

Plaintiff applied for Disability Insurance Benefits on July 12, 1993, alleging inability to work since June 11, 1991. Her application was denied initially, and she was notified on September 17, 1993. Her request for consideration was denied, and she was so notified on January 27, 1994. Plaintiff filed a Request for Hearing by Administrative Law Judge, stating that she had "no additional evidence to submit," that she was "represented by Lewis S. Victor, who is an attorney," and that she wished to appear in person. She signed another Request for Hearing by Administrative Law Judge on February 28, 1994. The Administrative Law Judge (ALJ), in a written opinion issued June 5, 1995, made the following findings:

1. The claimant met the special earnings requirements of the Act on June 11, 1991 the date the claimant stated that she became unable to work.

2. The claimant has engaged in substantial gainful activity since her alleged onset date.

3. The claimant is currently engaging in substantial gainful activity.

4. The medical evidence establishes that the claimant has bulging cervical disc and possible thoracic outlet syndrome.

5. Claimant's testimony regarding pain and discomfort is not credible in light of the medical evidence of record.

6. Claimant is a younger person.

7. The claimant has a high school education.

8. The claimant is able to perform her past relevant work as a court reporter.

9. Claimant's nonexertional limitations do not significantly affect her ability to engage in substantial gainful activity.

10. Pursuant to 20 C.F.R. 404.1520(b), she is not disabled.

11. Even if she were not engaged in substantial gainful activity, the combination of claimant's exertional and nonexertional limitations do not preclude the claimant from engaging in substantial gainful activity.

Record, at 25–26. The ALJ concluded, accordingly, that plaintiff was not disabled and denied her claim for benefits.

Plaintiff filed an appeal with the Appeals Council. The Action of the Appeals Council on Request for Review, dated November 1, 1996, states:

The Appeals Council has considered the request for review of the Administrative Law Judge's decision issued on June 5, 1995.

. . .

The Appeals Council has concluded that there is no basis ... for granting your request for review.

Record, at 5. The Appeals Council declared that the Administrative Law Judge's decision stands as the final decision of the Commissioner of Social Security in this case.

## II. A Summary of Plaintiff's Contentions

The letter of December 7, 1995 from plaintiff's attorneys to the Appeals Council, Record, at 9–11, is a summary of the issues that plaintiff presents in this appeal. As stated in that summary,

(1) the appeal is premised on a core argument of substance that the Administrative Law Judge's finding that plaintiff was engaged in substantial gainful activity was undermined by an error regarding factual predicate of a $500 minimum of income

prescribed in 20 C.F.R. § 404.1575(c) as necessary to a determination that a claimant did "receive a substantial income from the business" in which she was engaging;

(2) a second argument that "medical findings in the Hearing decision of June 5, 1995" by the Administrative Law Judge, see Record, at 18–26, were flawed because "influenced" (see discussion of this contention in Part VI of this opinion) by the failure to apply the $500 minimum correctly; and

(3) an argument that the ALJ orally found (as indicated in this transcribed version of the Audiotape of the February 6, 1995 hearing) that (i) the plaintiff "does have a disability but the question is on substantial gainful activity," (ii) the ALJ "is then satisfied as to the nature of the disability . . . ."

Record, at 9–11.

Plaintiff asked the Appeals Council, and now asks this court, to treat the "oral findings" recited in subpart (3) immediately above as if inconsistent with the ALJ's later written decision. The problem with this contention is that it fails to take account of the fact that the ALJ, in conducting oral examination of plaintiff, seemed satisfied with the evidence of record regarding the nature of the disability and chose not to probe further into that aspect of the case. The ALJ chose instead to orally examine more closely the issue of substantial gainful employment. For this reason, when read in conjunction with the totality of the hearing's transcript and the record, the ALJ's oral statements at issue cannot be reasonably understood as final and binding, as distinguished from, an expression of tentative views subject to reconsideration before she made her expected formal decision in writing.

For the reasons stated in the remainder of this opinion, I conclude, however, that for other reasons the Commissioner's decision is not supported by substantial evidence and must be reversed. The case will be remanded to the Commissioner with instructions as explained in Part VII below.

## III. Filings and Submissions in This Court

Plaintiff filed a complaint in this action on January 13, 1997 (Docket No. 1). The court

issued a procedural order on February 2, 1997, ordering the parties to file appropriate motions to affirm or reverse the decision of the Commissioner (referred to in the caption of the motion as decision of the Secretary) (Docket No. 2). Plaintiff filed a motion to reverse (Docket No. 4, filed March 31, 1997). The Commissioner responded in the form of a Motion to Dismiss (Docket No. 8, filed May 2, 1997), which was later withdrawn (Docket No. 13, filed June 2, 1997). The Commissioner then filed an Answer (Docket No. 14, filed June 2, 1997), and Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket No. 17, filed July 29, 1997). The motions to reverse and to affirm are now pending.

### IV. *The Applicable Law*

The Social Security Act (the Act) provides for payment of disability insurance benefits to eligible individuals who are disabled and unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(a) and (d)(1)(A).

The Act defines an individual as "under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for the work." 42 U.S .C. § 423(d)(2)(A).

Congress has entrusted the primary responsibility for making disability determinations to the Commissioner. *See* 42 U.S.C. § 405(b) and (g) (1997 Supp.) (incorporating 1994 Amendment, which substitutes "Commissioner" for "Secretary" throughout the Act as authorized decisionmaker). The role of the district court under 42 U .S.C. § 405(g) is to determine whether there is substantial evidence on the record to support

the decision of the Commissioner, and not to reweigh the evidence or try the issues *de novo*. *Id.; Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir .1981). Resolution of conflicts in the evidence and the ultimate determination of disability are for the Commissioner. 42 U.S.C. § 405(g) (1997 Supp.); *Tremblay v. Secretary of Health and Human Services,* 676 F.2d 11, 12–13 (1st Cir.1982).

At the same time, a district court reviewing a decision of the Commissioner is obligated to conduct a thorough review of the record as a whole and, in addition, to make an independent determination whether "there is substantial evidence to support the [Commissioner's] findings and whether the decision conformed to statutory requirements." *Geoffroy v. Secretary of Health and Human Services,* 663 F.2d 315, 319 (1st Cir.1981). "Substantial evidence" within the meaning of § 405(g) is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted); *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir. 1981). So long as substantial evidence in the record supports the Commissioner's findings, the district court must affirm the decision. 42 U.S.C. § 405(g) (1997 Supp.).

In accordance with statutory authorization to make rules and regulations to carry out provisions of the Act, *see* 42 U.S.C. § 405(a) and (b) (1997 Supp.), the Commissioner has adopted regulations relating to disability determinations. Included in these regulations is a sequential five-step analysis to determine if a claimant is "disabled" under the Act. *See* 20 C.F.R. § 404.1520. *See also Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290, 96 L.Ed.2d 119 (1987); *Goodermote v. Secretary of Health & Human Services,* 690 F.2d 5, 6 (1st Cir.1982).

In the evaluation of a claim under the sequential analysis, the first step is to determine whether the claimant is employed in substantial gainful employment. If she is so employed, then the claim is denied. *See* 20 C.F.R. § 404.1520(a)–(b). The second deter-

mination is whether the claimant suffers from a severe impairment or combination of impairments that limits her capacity to work. 20 C.F.R. § 404.1520(a) & (c). Plaintiff bears the burden of proof at these first two steps. *Yuckert*, 482 U.S. at 146 n. 5, 107 S.Ct. at 2294 n. 5. Thus, plaintiff fails to get beyond the first step if in fact she was engaged in substantial gainful employment.

Third, if the impairment meets the duration requirement and meets or equals the severity of an impairment listed in Appendix 1 to the regulations, she will automatically be found disabled. 20 C.F.R. § 404.1520(d); *see also* § 404, Subpart P, Appendix 1.

If, however, her ability to perform basic work-related functions is significantly impaired but there is no "Appendix 1—level" impairment, the fourth step of the analysis is reached. *Goodermote*, 690 F.2d at 6. The fourth step is to evaluate the claimant's "residual functional capacity" in order to determine whether she retains the ability, despite her severe impairment, to perform work she has performed in the past. 20 C.F.R. § 404.1520(e).

Plaintiff bears the burden to prove that her residual functional capacity is so limited that she cannot perform work she has done in the past. *Yuckert*, 482 U.S. at 146 n. 5, 107 S.Ct. at 2294, *Goodermote*, 690 F.2d at 7. If plaintiff establishes that she is incapable of performing work she has done in the past, the burden shifts to the Commissioner to show, under the last inquiry, that plaintiff has the residual functional capacity and is vocationally qualified to perform some other work that exists in significant numbers of jobs in the regional and national economy. *Yuckert*, 482 U.S. at 146 n. 5, 107 S.Ct. at 2294 n. 5; *Goodermote*, 690 F.2d at 7; 20 C.F.R. § 404.1520(f).

### V. *Medical Evidence*

*Bilateral Hand and Arm Problems*

Plaintiff was 44 years old at the time of the ALJ's decision in June 1995. She has a high school education, was trained at a stenotype school, and has worked as a court reporter.

The first medical evidence of record shows a visit to Dr. David Borland on July 17, 1990, during which plaintiff complained of bilateral hand and arm pain. Dr. Borland determined that plaintiff's examination suggested carpal tunnel syndrome and recommended non-operative treatment.

In June 1991, Dr. Borland examined the plaintiff and determined that her positive Tinel and Phalen signs were suggestive of carpal tunnel syndrome, but noted no evidence of ulnar nerve problems or thoracic outlet syndrome. An electromyogram and the nerve conduction studies that plaintiff underwent were normal. In July 1991, plaintiff was injected with cortisone in her right hand.

In early September 1991, Dr. Borland examined the plaintiff and noted that plaintiff felt an improvement, which was supported by his examination. But later that month, plaintiff again complained to Dr. Borland of numbness in her hands. At that point, Dr. Borland referred the plaintiff.

Dr. Fred H. Hochberg examined plaintiff on September 30, 1991. Based on his physical examination of plaintiff, he determined that the plaintiff did not have carpal tunnel syndrome, but thoracic outlet syndrome. Dr. Hochberg prescribed a regimen of physical therapy for plaintiff and reported expectations that plaintiff could go back to full-time work in approximately eight weeks.

The plaintiff received therapy with some improvement from October 1991 until early December 1991. On December 3, 1991, the plaintiff started a home-exercise program and her physical therapist revised the expectations about her return to work to at least three months from that date.

From February 1992 until December 1992, plaintiff received occupational therapy, which included hand therapy. During this period, the therapists' evaluations suggest that plaintiff's condition showed poor progress. These evaluations noted that plaintiff functioned at an activity level that was much lower than normal. During this period, the therapists reported that one or another of the affected areas, i.e. hands, elbows, arms and neck, would sometimes show improvement and sometimes show worsening, but no estimate of the direction or quantity of total change was ever indicated.

During January and February of 1993, plaintiff continued receiving occupational therapy. The therapist's notes from February 1993 reported hypomobility, tightness and weakness in her hands, with poor endurance for activity. The progress notes for March 1993, however, reveal a lapse in her attendance due to a problem with her insurance carrier. In that month, Dr. Hochberg referred the plaintiff to Dr. John Skillman, who examined the plaintiff in May 1993. Dr. Skillman found ambiguous signs regarding thoracic outlet syndrome and prescribed that X-rays and a magnetic resonance (MR) of the plaintiff's neck be conducted. The X-rays reflected normal results, but the MR showed a deformity, disc herniation, and mild abnormality of the adjacent cord.

In August 1993, the Disability Determination Services requested that Dr. Michele Masi conduct a consultative examination of the plaintiff. Dr. Masi determined that plaintiff had nearly normal ranges of motion in her neck, shoulders, elbows and wrists, with normal reflexes and sensation in her upper extremities. Her hands showed symmetric grip strength and normal fine motor skills. Dr. Masi did notice "giveway weakness" in the plaintiff's right wrist, but noted that it was difficult to separate from complaints of pain. Dr. Masi interpreted the plaintiff's neurological exam to be normal and found no evidence of thoracic outlet syndrome. Furthermore, Dr. Masi determined that the plaintiff could sit, stand and walk without restriction, lift and carry up to 30–35 pounds, write, and type, albeit with opportunities to rest and change positions.

Dr. Hochberg continued tracking the plaintiff's progress after his referral to Dr. Skillman. In October and November 1993, Dr. Hochberg saw the plaintiff and noted improvement to an extent "likely better enough to regain work." In December 1993, however, Dr. Hochberg wrote in a letter to plaintiff's insurance company that plaintiff could only work for periods of 45 minutes, three times per day. By May 1994, Dr. Hochberg revised that determination and stated that plaintiff could work for periods of two to four hours a day, with breaks in between.

In August 1994, Dr. Victor Iacono saw plaintiff and found that she had some tenderness in her wrists. Dr. Iacono found that plaintiff's right grip strength was weaker than her left grip strength, while the Tinel sign and "dson maneuver" did not show signs of abnormality. Dr. Iacono diagnosed plaintiff with right arm and hand pain likely resulting from tendonitis at the wrist and/or right forearm with possible compressive neuropathy or from early carpal tunnel syndrome. Dr. Iacono did not recommend surgery, and he rather suggested that a splint would be beneficial.

In January 1995, Dr. Henry F. Stoltman examined the plaintiff, finding a normal range of motion in her back, no atrophy and deep physiological tendon reflexes. Dr. Stoltman prescribed a regimen of exercises, which plaintiff tolerated without pain or discomfort.

## VI. *Application of the Prescribed Sequential Analysis*

As described in Part IV above, the applicable regulations prescribe a sequential five-step analysis. If the ALJ's finding required at any of these five steps is determinative as a matter of law and is supported by substantial evidence, this court must affirm her decision.

The ALJ's finding that plaintiff is not disabled is not supported by substantial evidence. At step one of the prescribed sequential analysis, the record does not present substantial evidence that plaintiff was engaged, up to the time of the ALJ hearing, in substantial gainful employment. At step two, the ALJ did not make a finding that plaintiff's impairments were not severe. The ALJ's finding as to step three is not outcome-determinative as a matter of law. At step four, the record contained insufficient evidence to support a finding that plaintiff was able to perform her past relevant work. Finally, the ALJ did not make a step-five finding.

### A. Substantial Gainful Activity

█ In her motion to reverse, plaintiff focuses first and foremost on the ALJ's finding that the plaintiff had been and was engaged

in a "substantial gainful activity." Plaintiff argues that the ALJ did not properly consider the applicable regulatory standards in reaching that finding.

An ALJ's finding of substantial gainful activity is governed by the regulations in 20 C.F.R. § 404.1574–75. A person has engaged in substantial gainful activity if:

(1) Your work activity, in terms of factors such as hours, skills, energy, output, efficiency, duties and responsibilities, is *comparable to that of unimpaired individuals* in your community who are in the same or similar businesses as their means of livelihood;

(2) Your work activity, although not comparable to that of unimpaired individuals, is *clearly worth the amount shown in § 404 .1574(b)(2)* when considered in terms of its value to the business or when compared to the salary that an owner would pay to an employee to do the work you are doing; *or*

(3) You render *services that are significant* to the operation of the business and receive a *substantial income* from the business.

20 C.F.R. § 404.1575(a)(1)–(3) (emphasis added).

Plaintiff contends that her work activity does not fall within any of these three categories. Plaintiff alleges (i) that plaintiff's work effort, skills, energy output, and efficiency are less than that of other court reporters in the community, *see* 20 C.F.R. § 404.1575(a)(1), (ii) that her work activity for the relevant period is not worth the amount prescribed in Section 404.1574(b)(2), that is a $500 monthly average, *see* 20 C.F.R. § 404.1575(a)(2) and (iii) that her services are significant to her business, but she does not receive substantial income from the business, *see* 20 C.F.R. § 404.1575(a)(3)–(c).

In support of her finding, the ALJ recited determinations that the plaintiff was self-employed, rendered services that were significant to the operation of her stenographic business, and received substantial income from the business as supporting the finding under 20 C.F.R. § 404.1575(a)(3). In fact, however, the ALJ in her decision only supported her finding with determinations that plaintiff was engaged in work activities and that such activities constituted significant services to her business:

> She performs stenographic work on a part-time basis, conducts banking and bookkeeping activities for her business. In her stenographic capacities, the claimant lifts, carries and sets up her steno machine (weighing approximately 23 pounds). She takes down every word said, drives to and from her work sites, transcribes notes on a computer, edits, prints a rough draft, proofreads, corrects mistakes, makes final copies, prepares a bill, envelope for mailing, and takes each job to the post office for mailing. When working at home, the claimant is able to sit, stand or take a break as needed (Exhibit 26).

Record, at 23. The ALJ's decision did not make explicit reference to the applicable guidelines for making a determination of "substantial income" provided in 20 C.F.R. § 404.1575(b), and did not expressly evaluate whether the plaintiff received less than $500 per month on the average to determine whether she received substantial income. *See* 20 C.F.R. § 404.1574(b)(2)(vii).

The income reaching plaintiff from her stenography business would be substantial under the regulations if:

(1) It averages more than the amounts described in Section 404.1574(b)(2); or

(2) It averages less than the amounts described in Section 404.1574(b)(2) but the livelihood which you get from the business is either comparable to what it was before you came severely impaired or is comparable to that of unimpaired self-employed persons in your community who are in the same or similar business as their means of livelihood.

20 C.F.R. § 404.1575(c)(1)–(2). Under Subsection (1), the relevant amount under Section 404.1574(b)(2) is $500 per month. The record does not contain evidence that she surpassed this amount because it shows only that she had total yearly earnings from the business of $4,127 in 1993 and $2,128 in 1992. Record at 233, 241. The ALJ did not explicitly determine, as required for a determination regarding Subsection (2), what the

relevant comparable amounts were. Furthermore, the record did not contain substantial evidence that would support such a determination.

The issue that this court must now decide is whether the record also contains evidence that would support a finding contrary to the ALJ's finding. If so, the decision of the Commissioner must be reversed and the matter must be remanded for an explicit finding on this matter. If not, the decision should be affirmed despite this harmless formal error of failure to recite the explicit determination of this matter.

I conclude that the evidence before the ALJ could only support a determination that plaintiff received less than $500 a month, on the average, from her work activity. The Commissioner's finding that plaintiff was engaged in substantial gainful activity was not supported by substantial evidence because the evidence of record did not support a determination of substantial income under 20 C.F.R. § 404.1575(a)(3) & (c). Furthermore, the ALJ did not make determinations that either plaintiff's earnings are comparable to those of unimpaired individuals, *see* 20 C.F.R. § 404.1575(a)(1), or that the value of her work exceeded $500 a month on the average, *see* 20 C.F.R. § 404.1575(a)(2).

For these reasons, the ALJ's finding that plaintiff was engaged in substantial gainful activity is not supported by substantial evidence. Remand or reversal, in the context of the applicable sequential analysis, however, would only be appropriate if the ALJ's further findings as to the remaining four steps in support of her denial of benefits are either erroneous as a matter of law or not supported by substantial evidence.

### B. Severe Impairment and Listed Impairments

The Commission asks this court to affirm the ALJ's decision based on an allegedly appropriate step-two finding that plaintiff suffered no severe impairment. As discussed above in Part IV, plaintiff bears the burden of proof to show severe impairment. If the ALJ made a finding of no severe impairment that is supported by substantial evidence, this court's inquiry must go no further. I conclude, however, that the ALJ did not make a finding as to step two that would require this court to affirm the ALJ's decision.

■ Contrary to the Commissioner's allegations in her motion to affirm, the ALJ did not make a step-two finding that plaintiff's condition did not constitute a severe impairment or combination of impairments that limited her capacity to work. *See* 20 C.F.R. § 404.1520(a) & (c). A step-three finding that plaintiff's condition is not listed in Appendix 1 to the regulations is not outcome-determinative as a matter of law and does not eliminate the need to make an appropriate step-two finding.

The step-two determination is whether in the past or present an impairment has *significantly limited* the plaintiff's ability to do *basic work activities*, regardless of whether the impairment is listed in the Appendix or not. Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404 .1521(b). The abilities could be significantly limited at present or could have been significantly limited in the past. 20 C.F.R. § 404.1520(c). For an impairment to be found not severe, it must be:

> a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on the individual's physical or mental ability(ies) to perform basic work activities.

Social Security Ruling No. 86–8, *reprinted in* Social Security Reporting Service: Rulings, 1983–1991, at 423, 425 (West 1997).

■ The ALJ did not make the determinations and the finding required by step two in the sequential analysis. Essentially, the ALJ was to make an evaluative determination of how basic physical and mental functions and reactions interacted and affected the plaintiff's basic capacity to do *most types of work*. *See* 20 C.F.R. § 404.1521(b)(1)–(6) (listing examples of observations to consider). A ruling of the Social Security Administration has clarified the ALJ's need to make a clear finding of no severe impairment if the claim is to be denied on that basis:

> Great care should be exercised in applying the not severe impairment concept. If an

adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued. In such a circumstance, if the impairment does not meet or equal the severity level of the relevant medical listing, sequential evaluation requires that the adjudicator evaluate the individual's ability to do past work, or to do other work based on the consideration of age, education, and prior work experience.

Social Security Ruling No. 85–28, *reprinted in* Social Security Reporting Service: Rulings, 1983–1991, at 390, 394 (West 1997). Nowhere in the ALJ's decision does she report such a finding or take note of her duty to make such a finding.

■ A reviewing court cannot base an affirmance of the ALJ's determination of no disability solely on the Commissioner's allegations on appeal that an appropriate step-two finding was made, when, in fact, nothing in the ALJ's decision reasonably suggests that the ALJ reached such a finding.

Once again, however, this court cannot stop its review of the ALJ's decision at this point. The decision must still be affirmed if the record contains substantial evidence to support her further findings as to step four or five, and she made no errors of law.

### C. Capacity to Perform Past Relevant Work

The ALJ reported as a finding, without any significant discussion in her decision, that "the claimant is able to perform her past relevant work as a court reporter." Record, at 26.

Step four of the sequential analysis requires a particularized inquiry into the physical and cognitive demands of plaintiff's past employment. The regulations require that the decisionmaker determine the claimant's residual functional capacity (RFC) and the physical and mental demands of the work that the claimant has done in the past. 20 C.F.R. § 404.1520(e). *See also Santiago v.*

*Secretary of Health and Human Services,* 944 F.2d 1, 5 (1st Cir.1991). The determination of RFC is an evaluation of what the claimant can do despite any limitations and requires consideration of all evidence in the record as to the claimant's ability to meet certain demands of her past job, such as physical and mental demands, sensory requirements, and other considerations. 20 C.F.R. § 1545(a). At step four, however, considerations of age, education, and work experience are not decisive because the ability to perform only the past work, and not other jobs in the economy, is assessed. 20 C.F.R. § 404.1560(b).

■ The evaluation of RFC is for the ALJ to make at the ALJ hearing. 20 C.F.R. § 404.1546. In evaluating ability to perform past work, "the ALJ is entitled to rely upon claimant's own description of the duties involved in her former job, as well as her own statements of her functional limitations." *Santiago,* 944 F.2d at 5. (citation omitted). But the ALJ need not rely on such evidence alone. Advisory reports concerning residual functional capacity are "entitled to evidentiary weight, which will vary with the circumstances, including nature of the illness and the information provided [to] the expert." *Berrios Lopez v. Secretary of Health and Human Services,* 951 F.2d 427, 431 (1st Cir. 1991).

Due to the ALJ's lack of explicit explanation of this aspect of her decision, she did not make a determination of precisely what past relevant work she found that plaintiff was able to perform. This court, therefore, is left with only the Commissioner's contentions on appeal, and its own independent examination of the record, to discern the determinations and substantial evidence on which the ALJ could have based her finding.

■ The Commissioner asks this court to interpret the ALJ's findings as suggesting that the plaintiff's ability to perform her past job for very short periods at any given time, or "on a part-time basis," constitute, as a matter of law, a step-four determination supported by substantial evidence that plaintiff can perform her past relevant work. The Commissioner relies on *Arocho v. Secretary of Health and Human Services,* 670 F.2d

374, 376 (1st Cir.1982), for this proposition. In *Arocho,* however, the Court of Appeals for the First Circuit was reviewing a step-five finding because "it was conceded that appellant is not able to perform any of his prior jobs." 670 F.2d at 375. The Commissioner's argument that under *Arocho* "part-time work qualifies as a substantial gainful activity," Motion to Affirm, at 15, may be correct for step five, but is not decisive for a step-four determination because, at this step, the applicable prescriptions require a determination that plaintiff can engage in her past relevant work, not in some substantial gainful activity.

The Commissioner, on appeal, contends alternatively that the RFC evaluation and Dr. Masi's observations are substantial evidence that supports a determination that plaintiff is able to perform "medium" work, and that, because her past work would constitute "medium" work under the regulations, plaintiff was able to perform her past relevant work.

Even if the evidence was sufficient to support a determination of "medium" work, such a determination is not decisive of a step-four finding. "Medium work" refers to a physical exertion requirement used in making a step-five determination as to what other jobs in the national economy a claimant could perform. 20 C.F.R. § 404.1567. In making a step-four determination, the ALJ was required to evaluate with particularity the demands of plaintiff's past relevant work as a full-time court reporter. The ALJ was not to engage in the labelling that is necessary and prescribed for the more generalized finding that is required in step five; that finding the ALJ did not make.

█ I conclude that a determination of medium work is not sufficient to support the ALJ's step-four finding in this case. Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The regulatory definition of medium work is not coextensive with the description of plaintiff's past relevant work. The lifting of objects is not the only physical strain in court reporting, which requires manipulating a machine for prolonged periods of time in a fixed posture among other tasks, none of which the ALJ considered. Furthermore, the description of plaintiff's past work to which the Commissioner points as constituting medium work is not that of her work activities before the alleged impairment, but of her activities during the period, from 1994 on, in which she did some court reporting only on a part-time basis. A determination that plaintiff could lift certain weight does not reasonably constitute adequate support that plaintiff could perform her past job. A determination of "medium work," therefore, is not enough to support a finding that plaintiff could perform her past job.

As potential support for a finding that plaintiff can perform her past occupation as a full-time court reporter, the record contains only an RFC evaluation performed by a non-examining state agency physician and the evaluation of Dr. Masi, a consultative examiner. The ALJ discussed the evaluation of Dr. Masi in her decision. This opinion explains Dr. Masi's evaluation in Part V above. In relevant part, Dr. Masi found that plaintiff could sit, stand and walk without restriction, lift and carry up to 30–35 pounds, and write and type, given that she had opportunity to take breaks and shift positions. The record contained a transcribed version of these and others of Dr. Masi's medical determinations.

Although the ALJ did not discuss the RFC evaluation in her decision, the record did and does contain this evaluation. The physician who conducted the RFC evaluation did not appear at the hearing before the ALJ. That physician marked boxes in the RFC form in the record indicating that plaintiff could carry up to fifty pounds and could stand for about 6 hours in an 8–hour workday. In support of these observations, the physician noted no objective neurological definition of plaintiff's weakness, good grip strength, fine motor movements, and no postural, manipulative, visual, communicative, or environmental limitations.

█ The ALJ, however, never made a determination of RFC or of the mental, physical and other demands of plaintiff's past work as court reporter. The ALJ must have made such determination before reaching her step-four finding. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1546. The ALJ never determined precisely which was

the past relevant work, part-time or full-time, and what part of her workday the plaintiff spent doing what. In the absence of these determinations, the record is insufficient for this court to affirm the ALJ's finding that plaintiff is able to perform her past relevant work.

Still, because plaintiff has the burden to show that she cannot perform her past relevant work, an issue remains for this court as to whether the record also contains evidence that would support a finding contrary to the ALJ's finding. This court determines that the record contains several statements from treating physicians and therapists noticing limitations on endurance and other limitations that would support a finding that plaintiff cannot perform her past relevant work, even though these items of evidence are not determinative as a matter of law.

The decision of the Commissioner, therefore, must be reversed and the matter must be remanded for a required explicit finding supported by substantial evidence on this matter.

### ORDER

For the foregoing reasons, the decision of the Commissioner is reversed and this matter is remanded to the Commissioner for additional proceedings consistent with this opinion. The Clerk will enter Final Judgment accordingly.