NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1392                                    Appeals Court


DMITRY VEDENSKY  vs.  VERONICA VEDENSKY.


No. 13-P-1392.

Middlesex.     September 8, 2014. - December 30, 2014.

Present:  Trainor, Rubin, & Sullivan, JJ.


Divorce and Separation, Alimony, Modification of judgment.
     Evidence, Expert opinion, Earning capacity.



     Complaint for divorce filed in the Middlesex Division of
the Probate and Family Court Department on December 19, 2006.

     A complaint for modification, filed on June 10, 2011, was
heard by Spencer M. Kagan, J., and a motion to amend the
judgment was considered by him.


     Mary Beth L. Sweeney (Catharine V. Blake with her) for the
wife.
     Patricia A. DeJuneas for the husband.


     SULLIVAN, J.  Veronica Vedensky, the former wife, appeals

from an amended judgment of modification of the Probate and

Family Court, which, among other things, orders her to pay to

Dmitry Vedensky, the former husband, rehabilitative alimony in

the amount of $635 per week for 104 weeks.[1]  See G. L. c. 208,
§§ 37, 53.[2]  Veronica contends that the complaint for
modification of alimony was barred by a previous complaint for
modification of child support, and that the award of
rehabilitative alimony was improper.  We conclude that the
complaint for modification of alimony was not barred by the
adjudication of the complaint for modification of child support.
We also conclude that the judge did not abuse his discretion in
awarding rehabilitative alimony, but erred in his consideration
of the wife's income from a second job which commenced after the
entry of an "initial order."  G. L. c. 208, § 54(b)(2), inserted
by St. 2011, c. 124, § 3.  Accordingly, we vacate so much of the
amended judgment of modification as applies to alimony and
alimony-related conditions, and remand for further proceedings.
In all other respects, the amended judgment of modification is
affirmed.

_____

[1] A judgment of modification was entered on May 16, 2013.
On July 12, 2013, the judge entered an amended judgment of
modification, in which he amended certain portions of the May
16, 2013, judgment, and included the following proviso:  "Any
and all provisions of the Judgment of Modification dated May 16,
2013 not specifically addressed above shall remain in full force
and effect as written."  Our references to the amended judgment
of modification include both the May 16, 2013, judgment and the
July 12, 2013, amended judgment.

[2] This matter was tried in 2013.  Dmitry's request for
alimony is governed by the Alimony Reform Act of 2011, St. 2011,
c. 124.  See G. L. c. 208, §§ 48-55.

1. <u>Background</u>. We summarize the history of the case and the facts found by the judge, reserving certain details for discussion in connection with the specific issues raised. The judgment of divorce nisi entered on March 14, 2007, incorporating a separation agreement signed by the parties on November 2, 2006. The separation agreement, executed when both parties were fully employed, waived past and present alimony, but contained a reservation of rights to future alimony. Veronica was also designated primary physical custodian and Dmitry was ordered to pay child support in the amount of $230 per week.

The parties enjoyed an upper middle class station in life during the marriage. Dmitry is highly educated, holding a doctorate in applied mathematics, and a "Masters of Science degree in finance." Before the divorce, Dmitry was employed in the financial, engineering, and technology industries, earning a six-figure salary. He began, however, to experience difficulties at work, took disability leave, and returned to a different job at a lower rate of pay. Two years after the divorce, in April of 2009, Dmitry again took short-term disability leave, and did not return to full-time work. In November of the same year he began to receive Social Security disability income (SSDI) benefits for a psychiatric disability.

On December 7, 2009, Dmitry filed a complaint for modification of the 2007 judgment. He requested a reduction of his child support obligation, citing his job loss, disability, and the availability of SSDI dependent benefits. In 2010, a judgment of modification entered relieving Dmitry of his child support obligation pursuant to an agreement between the parties in which Veronica received SSDI dependent benefits on behalf of the parties' minor child.

Dmitry's unemployment persisted. Dmitry filed the present complaint for modification requesting alimony on June 10, 2011. Veronica moved to dismiss, claiming that Dmitry failed to demonstrate that a material change in circumstances had occurred since the earlier judgment modifying his child support obligation. The judge deferred ruling on the motion to dismiss, and set the complaint for trial. A five-day trial was held in 2013 at which Dmitry's treating psychiatrist testified, as well as Veronica's vocational and psychiatric experts. The judge ordered that Veronica pay $635 per week in rehabilitative alimony to Dmitry for a period of 104 weeks.

By the time of trial Dmitry had begun part-time work as a teacher at a school of mathematics, but the hours he was allotted by the school were inconsistent. He earned approximately $650 per month, and continued to receive SSDI benefits. At the time of the divorce, Veronica, a physician,

was employed earning $122,720 annually.  At the start of the trial she was employed at a local medical center, where, with overtime and bonus, she earned $188,599.32 in Internal Revenue Service W-2 form wages (W-2 wages), of which approximately $6,800 was bonus income.[3]  In 2011, however, no bonuses were given, and in March of 2012, she took a second job at a rehabilitation hospital (second job), working weekends on a per diem basis.[4]  The judge found that she did so in order to meet her expenses and the cost of private school and college for the two children of the marriage.[5]  During the trial Veronica took a new job at a Boston hospital, where she earned $4,115 per week, or $214,000 annually.  She also continued to work at the second job on a per diem basis.

---

[3] Veronica grossed $204,000, but W-2 wages were reduced by retirement plan deductions.

[4] The judge found that Veronica's earnings from the second job totaled $12,950 through September 30, 2012.  The judge further found that, working two weekend days per month, Veronica could earn an average of $2,240 per month ($26,880 per year) going forward.

[5] Under the terms of the separation agreement, both Dmitry and Veronica were responsible for the expenses of "college or other institutions" for the two children.  When Dmitry lost his income, Veronica paid the children's tuition for private school and college.  At trial, the judge found that Veronica alone was responsible for the private secondary school tuition, since the parties had not jointly agreed to Veronica's choice of school, and the parties' separation agreement did not obligate Dmitry to agree to a private secondary school education.  The judge also relieved Dmitry of his obligation to pay the college tuition of both children.  Neither of these rulings is challenged on appeal.

The judge concluded that Dmitry had a future earning capacity of $95,000 per year, but that he was presently unable to work at his former level due to mental illness.  The judge found that Dmitry's mental illness "manifests itself in a way that compromises his ability to earn income," and that he was in need of intensive therapy and support while he engaged in that therapy.  For this reason, the judge ordered a period of rehabilitative alimony.  The judge recognized that the amount ordered exceeded Veronica's income (net of expenses) from her new job and her average earnings in the second job.  He found, however, that Veronica "could work more than two weekend days per month if she chose to," and therefore had the "ability to increase her income on a temporary basis if that is necessary to comply with the Court's [rehabilitative] alimony award."  See note 4, supra.

This appeal followed, challenging both the authority of the judge to hear this complaint for modification and the award itself.  We consider first the judge's authority to hear the complaint for modification.  We then consider the judge's determination of Dmitry's need and Veronica's ability to pay.  See Pierce v. Pierce, 455 Mass. 286, 295-296 (2009).

2.  Complaint for modification of alimony.  Veronica claims that the judge was precluded from hearing the merits of Dmitry's complaint for modification of alimony because Dmitry did not

demonstrate the existence of a material change of circumstances warranting a modification. See Buckley v. Buckley, 42 Mass. App. Ct. 716, 719-722 (1997). "To be successful in an action to modify a judgment for alimony . . . the petitioner must demonstrate a material change of circumstances since the entry of the earlier judgment." Schuler v. Schuler, 382 Mass. 366, 368 (1981), overruled in part on other grounds by Keller v. O'Brien, 425 Mass. 774, 777 n.7 (1997). See Hassey v. Hassey, 85 Mass. App. Ct. 518, 527-528 (2014).

Veronica argues that the "earlier judgment" by which the occurrence of a change in circumstances should be assessed is the judgment on Dmitry's complaint to modify child support, as it was based on the same circumstances, that is, Dmitry's disability and unemployment. However, the "earlier judgment" to which we look is the judgment of divorce nisi which addressed the issue of alimony. See Pierce v. Pierce, supra at 295 n.9; Buckley v. Buckley, supra at 720-722.

The fact that there was a previous modification proceeding concerning child support does not alter this result. In discussing the initial award of alimony under G. L. c. 208, § 34, the Supreme Judicial Court has noted, "[w]e do not choose to establish an incentive to a husband or a wife to request alimony during divorce proceedings simply to protect himself or herself should experience later persuade him or her . . . that

alimony is appropriate." Cherrington v. Cherrington, 404 Mass. 267, 270 n.6 (1989). Similarly, where the question of alimony has been reserved in the earlier divorce judgment, the parties are not required to pair every complaint for modification of child support with an alimony request.[6] The judge did not err in hearing Dmitry's complaint for modification seeking alimony.

3. Dmitry's need. Rehabilitative alimony is defined as "the periodic payment of support to a recipient spouse who is expected to become economically self-sufficient by a predicted time." G. L. c. 208, § 48, inserted by St. 2011, c. 124, § 3. "The purpose of an award of rehabilitative alimony is 'to protect, for a limited time, a spouse whose earning capacity has suffered (or become nonexistent) while that spouse prepares to reenter the work force.'" Zaleski v. Zaleski, 469 Mass. 230, 240 (2014), quoting from Moriarty v. Stone, 41 Mass. App. Ct. 151, 158 (1996). A judge has "considerable discretion" when awarding alimony. Hassey v. Hassey, supra at 524.

We turn to the challenges to the particulars of the alimony award, looking first to Dmitry's need, and second, to Veronica's ability to pay. See Pierce v. Pierce, supra. We review both the form and amount of an award of alimony, examining "a judge's

---

[6] We further note that if a contrary rule were adopted, it would not necessarily favor Veronica's position. The issue of Dmitry's disability was central to and uncontested in the previous child support modification proceeding. Whether Dmitry was disabled was contested in the alimony proceeding.

findings to determine whether the judge considered all of the relevant factors . . . and whether the judge relied on any irrelevant factors." Zaleski v. Zaleski, supra at 235-236. Here, "the judge considered all of the relevant factors under G. L. c. 208, § 53(a)." Id. at 236. The judge made comprehensive findings of fact that support his conclusion that "under the circumstances, rehabilitative alimony is the appropriate type to award in this case."[7] The decision to award rehabilitative alimony was not an abuse of discretion. See Holmes v. Holmes, 467 Mass. 653, 661 (2014); Zaleski v. Zaleski, supra at 241, 243.

Veronica claims that the judge improperly calculated the amount of Dmitry's need by (1) failing to adopt expert opinions regarding Dmitry's capacity to earn an income, (2) improperly quantifying Dmitry's earning capacity, and (3) awarding alimony greater than Dmitry's stated needs. "A judgment will not be disturbed on appeal unless 'plainly wrong and excessive.'" Heins v. Ledis, 422 Mass. 477, 481 (1996), quoting from Pare v. Pare, 409 Mass. 292, 296 (1991).

---

[7] In addition to considering the length of the marriage, the judge found that Dmitry has "education, skills and experience" in a variety of professional fields. He found that Dmitry suffers from depression, anxiety, and characteristics of personality disorder, all conditions which dated to childhood and interfered with his ability to work. The judge also found that Dmitry's disability prevents him from achieving the same income level he had at the time of the divorce, but that therapy should allow him to become "self-supporting once again."

a.  Expert testimony.  Veronica claims that the judge erred by failing to properly consider the "uncontroverted evidence" presented by two experts concerning Dmitry's ability to work. The judge's findings demonstrate that he considered the testimony of Veronica's experts, and reconciled inconsistencies between their reports.  According to the report by the vocational expert, Dmitry "has clearly established his employability and an earning capacity based upon his education, professional background, and work experience."  The judge did not fully credit this report, however, concluding "that any analysis of [Dmitry's] present employability that does not address [Dmitry's] current mental status is incomplete," because Dmitry's "mental illness manifests itself in a way that compromises his ability to earn income at that level."

The judge also partially credited the testimony of Veronica's psychiatric expert, who stated in his report that Dmitry experienced depression and had a personality disorder, but "is not disabled from working."  The judge credited this expert's report and testimony insofar as he recommended "that [Dmitry's] symptoms can be mitigated through dialectical behavioral therapy."  The judge relied on this report in awarding alimony for the 104-week period.  The judge thus harmonized the evidence of the experts and formulated findings that reflected his over-all assessment of their separate, but

related, opinions. The judge was not required to accept the opinion of the experts, and was entitled to credit all, part, or none of their testimony. See The Woodward School for Girls, Inc. v. Quincy, 469 Mass. 151, 170 n.29 (2014). The judge was in a "superior position to observe witnesses and weigh evidence." Murphy v. Murphy, 82 Mass. App. Ct. 186, 193 (2012).

b. Earning capacity. The judge found that Dmitry had a maximum earning capacity of $750 per month. The judge based this finding on the Social Security Administration's (SSA) "trial work period" regulations. According to the SSA regulations in effect in 2013, once a person receiving SSDI earns over $750 per month, benefits may be terminated if the SSA determines that the person is no longer disabled, and will be terminated if the person earns in excess of $750 per month for nine months within a period of sixty consecutive months. See 20 C.F.R. § 404.1592 (2012). Veronica argues that earning capacity should have been determined based on the SSA regulations governing initial eligibility, which set a threshold beyond which the applicant is found to be able to engage in substantial gainful activity. See, e.g., Rams v. Chater, 989 F. Supp. 309, 315-317 (D. Mass. 1997). The SSA initial eligibility regulations set the threshold at $1,040 per month, an amount above which an applicant for benefits is considered to be capable of substantial gainful activity, and therefore

ineligible for benefits.  See 20 C.F.R. § 404.1571 (2012).  The judge was justified in relying on the disability disqualification regulations, rather than the initial eligibility regulations.  See 20 C.F.R. § 404.1574 (2012).  It was not error for the judge to assess Dmitry's earning capacity at a level which did not jeopardize his continuing eligibility for SSDI benefits while undergoing therapy intended to increase the likelihood of a return to full-time work.

c.  <u>Award beyond stated needs</u>.  The judge found that Dmitry's weekly expenses as reported in his financial statements exceeded his reported income by $525.  The judge, however, awarded alimony of $635 per week, $110 higher than the stated deficit, to reflect "the increase in uninsured medical expenses that [Dmitry] will necessarily incur in complying with the Court's order," which requires Dmitry to undergo regular treatment.  Veronica asserts that the over-all award is unreasonable and exceeds his needs.  A judge has "considerable discretion" in setting alimony awards, see <u>Hassey</u> v. <u>Hassey</u>, 85 Mass. App. Ct. at 524, and is not bound strictly by the stated needs of an alimony recipient.  See <u>Amrhein</u> v. <u>Amrhein</u>, 29 Mass. App. Ct. 336, 341 (1990).  The decision to award an additional $110 week was not "plainly wrong [or] excessive," see <u>Redding</u> v. <u>Redding</u>, 398 Mass. 102, 107 (1986), and "flow[ed] rationally

from the findings and rulings." <u>Williams</u> v. <u>Massa</u>, 431 Mass. 619, 631 (2000).[8]

4. <u>Veronica's income</u>. Veronica contends that the judge improperly awarded alimony using the same gross income as he used to calculate her child support obligation. The Alimony Reform Act (Act) provides, "[w]hen issuing an order for alimony, the court shall exclude from its income calculation . . . gross income which the court has already considered for setting a child support order." G. L. c. 208, § 53(<u>c</u>), inserted by St. 2011, c. 124, § 3. See <u>Zaleski</u> v. <u>Zaleski</u>, 469 Mass. at 242 n.19. Veronica, however, is not obligated to pay child support by any order of the court, and the judge did not consider the SSDI payments in awarding alimony.[9] We therefore express no

_____

[8] Veronica also asserts that certain of Dmitry's expenses, such as condominium fees, should not have been allowed. At best, the record reflects factual disputes which were for the judge to resolve. See <u>W. Oliver Tripp Co</u>. v. <u>American Hoechst Corp</u>., 34 Mass. App. Ct. 744, 751 (1993) ("If the trial judge makes one of several possible choices of what facts are supported by the evidence, the judge's choice is not clearly erroneous"); <u>Braun</u> v. <u>Braun</u>, 68 Mass. App. Ct. 846, 860 (2007). The inclusion of forty dollars per week for entertainment and forty dollars per week for vacations was not excessive, in view of the parties' prior station in life, and the record evidence that the wife had taken four vacations, including a vacation abroad, during the year prior to the trial.

[9] Veronica is responsible for payments associated with supporting the parties' children. The judge subtracted the private education expenses Veronica incurs on behalf of the children from her gross income when calculating the alimony award. The parties do not raise, and we do not decide, the

opinion as to the proper interpretation of § 53(c), which is inapplicable in this case.

Veronica further claims that the judge miscalculated her income and required her to pay alimony in excess of her income and expenses. She offers her own calculation, based on the base gross income of $4,115 per week ($214,000 per year) from her full-time job. She then subtracts "assumed 30% taxes" from that amount, based on a chalk prepared by her. Subject to limited exclusions not applicable here, income for purposes of alimony is calculated on the basis of gross income, that is, pretax income. See G. L. c. 208, § 53(b); Zaleski v. Zaleski, supra at 232 n.5. See also Holmes v. Holmes, 467 Mass. at 655 n.2; C.D.L. v. M.M.L., 72 Mass. App. Ct. 146, 156 (2008). The judge did not err when he considered Veronica's gross income.[10]

_____

propriety of subtracting education expenses from gross income in a case where there is no child support order.

[10] The judge was not obligated to consider the chalk, which is not evidence. Aselbekian v. Massachusetts Turnpike Authy., 341 Mass. 398, 402 (1960). We look to the record on which the chalk was based. Previous years' tax returns were in evidence, but Veronica did not make any argument, either below or on appeal, based on projected taxable income in her new position. See L.J.S. v. J.E.S., 464 Mass. 346, 350 (2013) (judge should consider tax consequences arising from judgment where "issue of tax consequences has been raised and the judge has been provided with appropriate evidence in the record" [quotation omitted]). In making her alimony calculations, Veronica also deducted a number of additional expenses she incurred on behalf of the children. The judge did not abuse his discretion in choosing not to deduct these expenses in calculating alimony. See generally Williams v. Massa, 431 Mass. at 634-635.

5. <u>Veronica's ability to pay</u>. Veronica contends that the alimony award is excessive based on her income and expenses. See G. L. c. 208, § 48, inserted by St. 2011, c. 124, § 3 (alimony is the "payment of support from a spouse, who has the ability to pay, to a spouse in need of support for a reasonable length of time, under a court order"). The parties did not address attribution of income in their submissions to the judge. The judge's rationale, which attributes an increased earning capacity to Veronica based on her second job, raised the issue of increased earning capacity for the first time.[11] In the exercise of our discretion, we address the judge's ruling and the applicable statutory provisions.

As noted above, at the time of trial Veronica worked full-time at one hospital, earning $214,000 a year, and part-time at a rehabilitation center on a per diem basis. There was

---

[11] We requested additional postargument submissions regarding the judge's order requiring Veronica to work additional hours at her second job, and the applicability of G. L. c. 208, § 53(a) & (b), and § 54(b). As discussed below, this argument is governed by a specific statutory provision. The judge did not address this provision and neither party addressed the statutory provision in their appellate briefs in chief. Dmitry now argues that Veronica waived any argument concerning § 54(b) on appeal by failing to address it in her appellate brief. It is the obligation of both parties to bring controlling legal authority to the attention of the court. Because alimony is a creature of statute, not common law, <u>Pierce</u> v. <u>Pierce</u>, 455 Mass. at 293-294, review of the award is confined to that which the statute authorizes. We therefore exercise our discretion to consider the governing and dispositive statutory provision.

extensive testimony concerning the second job.  In determining ability to pay, the judge considered both her full-time job and the part-time job.  Both parties submitted proposed findings and rulings, but neither party brought the governing statutory authority limiting permissible consideration of a second job to the judge's attention.  See G. L. c. 208, §§ 53-54.  The judge not only took income from the second job into account, he considered Veronica's ability to work additional hours at the second job, and attributed that income to her, for purposes of determining her ability to pay $635 per week in alimony.[12]

This aspect of the alimony award was in error to the extent that the judge relied on Veronica's actual and imputed second income in determining her ability to pay, without consideration of the presumptions set forth in the Act.  Under the Act, income

_____

[12] Although Veronica's per diem hours varied each month, the judge found that if she worked an average of two weekend days per month, she would earn an average of $521 per week ($27,092 per annum) in additional income.  The judge found that the full-time work combined with the average monthly per diem work, less stated discretionary expenses, resulted in $471.51 per week ($24,518.52 per year) in income in excess of her discretionary expenses, an amount which fell $173 short of the $635 that the judge found Dmitry needed on a weekly basis.  The judge sought to bridge the $173 per week gap, finding that Veronica could either reduce her expenses or increase her income.  Based on the one month in which she worked seven weekend days, the judge found that Veronica could work a third weekend day every month in order to make up the $173 per week difference.  In light of this assessment of her earning capacity, and the fact that she contributed $375 per week to her retirement fund, the judge found that Veronica "has the ability to increase her income on a temporary basis if that is necessary to comply with the Court's alimony award to [Dmitry]."

for purposes of alimony is defined as set forth in the Massachusetts Child Support Guidelines (guidelines).  G. L. c. 208, § 53(b).  The guidelines define income to include compensation from overtime and a second job.  See Massachusetts Child Support Guidelines § I-B (2009); id. at § I-B (2013).[13] However, the Act also provides that "[i]ncome from a second job or overtime work shall be presumed immaterial to alimony modification if:  (1) a party works more than a single full-time equivalent position; and (2) the second job or overtime began after entry of the initial order."  G. L. c. 208, § 54(b).  The definition of income in the guidelines contains parallel language, stating, "[i]f, after a child support order is entered, a Payor or Recipient obtains a secondary job or begins to work overtime, neither of which was worked prior to the entry of the order, there shall be a presumption that the secondary job or overtime should not be considered in a future support order."  Massachusetts Child Support Guidelines § I-B.

Here, Veronica worked a full-time job.  She took a second job only after the entry of the judgment of divorce.  Pursuant to § 54(b), the presumption of immateriality applies to income earned from her second job.  Accordingly, the alimony award must

---

[13] The guidelines in effect at the time of trial were issued on January 1, 2009, before the passage of the Act.  The provision concerning income from a second job was unchanged in the subsequent 2013 guidelines revision.

be set aside and the matter remanded to permit the judge to make findings and rulings regarding the award of alimony in light of the presumption.

We address those issues necessary to the disposition on remand. The Act and the guidelines provide that income may be attributed to a party who "is unemployed or underemployed." G. L. c. 208, § 53(f), inserted by St. 2011, c. 124, § 3. Massachusetts Child Support Guidelines § II-H (2009). See id. at § I-E (2013). Although the judge did not specifically say so, the judge's ruling in effect concludes that Veronica was underemployed because she was capable of working more hours -- either more hours two weekend days a month, or working six days a week, three weeks per month.[14] However, the Act must be construed as a cohesive whole, giving effect to each and every provision of the statute. See Zaleski v. Zaleski, 469 Mass. at 239. We conclude that a party who works at a full-time or full-

---

[14] Both the 2009 version and the 2013 version of the guidelines require that a judge considering the question of underemployment make findings regarding (1) the party's ability to work and (2) whether the party is earning less than she could through reasonable effort. See Massachusetts Child Support Guidelines § II-H (2009); id. at § I-E (2013). Here, the judge did not make a factual finding that Veronica had failed to use reasonable efforts to provide support. As discussed above, Veronica took a new job at a rate of pay equal to or higher than the rate of pay in her previous full-time position. She continued to work at the second job on weekends. Due to Dmitry's disability, she also assumed all of the children's educational expenses and was the primary physical caretaker of the children. See ibid. (listing factors to be considered in determining reasonable effort).

time equivalent job may not be found to be "unemployed" or "underemployed" based on the level of compensation received from a second job obtained "after entry of the initial order" unless the judge concludes, based on findings supported by the evidence, that a basis exists for rebutting the presumption of immateriality applicable to the income earned from the second job.

Accordingly, for the reasons stated, the award of alimony of $635 per week to Dmitry and the alimony-related provisions are vacated, and the matter is remanded for further proceedings. The alimony-related provisions, that is, maintenance of life insurance, attendance at therapy, and reporting attendance at therapy, shall remain in effect for sixty days, or until such time as the judge enters a further order, whichever comes first. The amended judgment of modification is affirmed in all other respects. The husband's request for attorney's fees on appeal is denied.

So ordered.