Blanchette v. SSA                    08-CV-349-SM   06/09/09

UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Teresa M. Blanchette,
     Claimant

     v.                                 Civil No. 08-cv-349-SM
                                        Opinion No. 2009 DNH 077
Michael Astrue, Commissioner,
Social Security Administration,
     Respondent


                          **O R D E R**


     Pursuant to 42 U.S.C. § 405(g), Teresa Blanchette moves to

reverse the Commissioner's decision denying her application for

Social Security disability insurance benefits, or DIB, under

Title II of the Social Security Act, 42 U.S.C. § 423.  The

Commissioner, in turn, moves for an order affirming his decision.

For the reasons given below, the decision of the ALJ is affirmed.



                       **Standard of Review**

     The applicable standard of review in this case provides, in

pertinent part:


          The [district] court shall have power to enter, upon
          the pleadings and transcript of the record, a judgment
          affirming, modifying, or reversing the decision of the
          Commissioner of Social Security, with or without
          remanding the cause for a rehearing.  The findings of
          the Commissioner of Social Security as to any fact, if
          supported by substantial evidence, shall be conclusive
          . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.' " <u>Manso-Pizarro v. Sec'y of HHS</u>, 76 F.3d 15, 16 (1st Cir. 1996) (quoting <u>Sullivan v. Hudson</u>, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." <u>Alexandrou v. Sullivan</u>, 764 F. Supp. 916, 917–18 (S.D.N.Y. 1991) (citing <u>Levine v. Gardner</u>, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " <u>Currier v. Sec'y of HEW</u>, 612 F.2d 594, 597 (1st Cir. 1980) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[ ] the evidence in the record as a whole." <u>Irlanda Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the

2

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 10). That statement is part of the court's record and will be summarized here to the extent necessary to provide context for this decision.

From February of 1986 through June of 2004, Blanchette worked as a school secretary, and from September of 2004 through June of 2006, she worked as a high-school attendance secretary. (Administrative Transcript (hereinafter "Tr.") at 129.) As an attendance secretary, her work-related physical activities included walking, standing, sitting, climbing, stooping, and writing/typing/handling small objects. (Tr. at 132.) The heaviest weight she lifted was less than ten pounds. (Id.) After she stopped working as a high-school attendance secretary, she continued to work as a bookkeeper for her husband's business, a job she had performed since 1975. (Tr. at 129.) Regarding that work, the Joint Statement of Material Facts explains:

> In November 2006, [Blanchette] reported [to SSA] that she planned to continue working as her husband's bookkeeper and secretary for 5 to 6 hours a week,

record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).

making $400-$500 per month (Tr. 108). After her [DIB] claim was initially denied on the basis of continued performance of substantial gainful activity (see Tr. 109), she reported that she had discontinued all services on behalf of her husband's business on November 12, 2006 (Tr. 110).

(Jt. Statement at 2.)

In October of 2006, Blanchette was seen by Dr. Pancras Van der Laan. In his progress note, he described her visit in the following way: "57 year old female presents with c/o abnormal cholesterol pt denied insurance, despite my letter and her lack of seizures for 35-40 years . . ." (Tr. at 199.) Dr. Van der Laan took Blanchette's medical history and wrote a "Review of Systems" that included, among other entries: "knee pain no. . . . back pain no. . . . no back pain." (Id.) He also performed a physical examination. His neurological examination produced the following results: "Sensory: normal. Motor: normal strength bilaterally. Gait: normal. Babinski: negative.[2] Reflexes: 2+ bilaterally. Coordination: normal." (Tr. at 200.) Dr. Van der Laan's physical examination resulted in three assessments: obesity, epilepsy, and hyperlipidemia.[3] (Id.)

_____

[2] Babinski reflex is defined as "dorsiflexion of the big toe on stimulating the sole of the foot; normal in infants but in others a sign of a lesion in the central nervous system . . ." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1634 (31st ed. 2007).

[3] Hyperlipidemia is defined as "elevated concentrations of any or all of the lipids [such as triglycerides or cholesterol] in the plasma." DORLAND'S, supra note 2, at 903.

On November 21, 2006, Blanchette applied for Social Security disability insurance benefits, claiming an onset date of November 10, 2006.

In January of 2007, Dr. Burton Nault, a non-examining physician, completed a "Physical Residual Functional Capacity Assessment" in which he found that Blanchette could: occasionally lift and/or carry twenty pounds, could frequently lift and/or carry ten pounds, could stand and/or walk, and could sit, for about six hours in an eight-hour work day, and could push or pull without limitation. (Tr. at 207). He found that she could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; balance, stoop, kneel, crouch, and crawl. (Tr. at 208.) He found no manipulative, visual, communicative, or environmental limitations. (Tr. at 209-10.) Dr. Nault concluded with the following additional comments:

> Most recent PE shows normal motor strength bilaterally, normal gait, reflexes 2+ in LEs, coordination is normal. She is obese at 225 Lbs. and 5.2" She takes meds to control her HTN and lipids — no pain medication required.
>
> Her ADLs show that she does light household chores, drives, can walk 1/2 mile;[4] says she has trouble climbing stairs. The degree of disability she describes is not reflected in her medical record.

_____

[4] According to a report claimant filed with the SSA in December of 2006, her ADLs actually say that she can walk "about 1/4 mile on a flat surface" before needing to stop and rest. (Tr. at 120, 125.)

5

(Tr. at 213.)

In February of 2007, Blanchette returned to Dr. Van der Laan. His progress note lists her chief complaints as: "1. DISCUSS DISABILITY / 2. Lots of pain, knees and lower back, shoulder pain, left handed, grinding motion in back / 3. In cold weather breathing difficulty using inhaler tid / 4. Auras, stutter / 5. back pain rad L side." (Tr. at 214.) Regarding Blanchette's back disorder, Dr. Van der Laan took the following history: "58 year old female presents with c/o low back pain in the midline, gradual onset, dull ache, aggravated with movement, walks bent over, lower back. c/o radiation of pain to the thigh on left side." (Tr. at 215.) Dr. Van der Laan's neurological examination produced the same results as the one he performed four months earlier. (Tr. at 216.) His assessments included hyperlipidemia, back disorder, obesity, screen-diabetes mellitus, depression with anxiety, DJD, hypertension, and epilepsy. (Tr. at 214.) As for treatment of Blanchette's back disorder, Dr. Van der Laan indicated that she was given an MRI,[5] and noted "still a

_____

[5] An MRI report dated February 27, 2007, provides as follows:

Findings: Except for early dessication of the L3-L4 disc, the study is normal. The rest of the discs are well hydrated with normal height and signal intensity of the discs is normal, as well as of the spinal cord and bone marrow. A hemangioma is noted in the L2

6

major problem for patient, w some radicular features to suggest NR impingement." (Id.)  Dr. Van der Laan recommended a follow up visit in three months.  (Tr. at 215)

In May of 2007, Dr. Shankar Gupta, a non-examining physician, completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)."  Dr. Gupta opined that Blanchette could: lift up to twenty pounds occasionally and up to ten pounds frequently, carry up to twenty pounds occasionally and up to ten pounds frequently (Tr. at 228), sit for six hours at a time without interruption and six hours total in an eight-hour work day (Tr. at 229), stand for four hours at a time and six hours in an eight-hour work day (id.), walk for two hours at a time and six hours in an eight-hour work day (id.).  Dr. Gupta stated that Blanchette did not require the use of a cane to ambulate.  (Id.)  He made no findings regarding Blanchette's ability to use her hands and feet.  (Tr. at 230.)  He did find that Blanchette could occasionally climb stairs, ramps, ladders, or scaffolds; balance; stoop; kneel; crouch; and crawl.  (Tr. at 231.)  He also found that Blanchette could occasionally be

_____

> vertebral body.  The facets have a normal appearance. No findings of spinal or foraminal stenosis are evident.
>
> IMPRESSION:  Normal study except for early partial dessication of the L3-L4 disc.

(Tr. at 218).

7

exposed to moving mechanical parts and extreme cold. (Tr. at 232.) Dr. Gupta concluded by stating that Blanchette had the ability to shop; travel without a companion; ambulate without using a wheelchair, walker, two canes, or two crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed herself; care for personal hygiene; and sort, handle, or use paper or files. (Tr. at 233.)

Blanchette next saw Dr. Van der Laan in December of 2007.[6] (Tr. at 246). His back examination revealed: "Curvature mild. Mobility limited. SLR: approx 45 degrees bilat. Spine: tenderness on palpation. SI joints: tender on left side, tender on right side." (Tr. at 248.) His neurological examination revealed: "Sensory: normal. Motor: normal strength bilaterally.

---

[6] Dr. Van der Laan characterized Blanchette's chief complaints as follows:

1. MED CONDITION/DISABILITY / 2. Lawyer for disability / 3. knees, back, rad down R side to knee post, both knees crack standing up / 4. L hand tingles at night, weaker, L handed / 5. bowels a problem, diarrhea, pretty usual, no constipation. First a normal BM, then diarrhea — s/p colonos / 6. Fatigue, walking to the end of the driveway 60 to 70 feet / 7. Feels stiff in the am / 8. Memory starting to fade / 9. Breathing hard, walking, needs a cart, uses a cane / 10. Car accident — knees into the dashboard / 11. Can only carry 6 lbs.

(Tr. at 246.)

Gait: wide based. Babinski: negative. Reflexes: absent knee and ankle DTRs. Coordination: normal." (Id.) He made the following assessments: back disorder, morbid obesity, epilepsy, hypertension, DJD, knee pain, and irritable bowel syndrome. (Id.) With respect to Blanchette's back disorder, under the heading "Treatment," Dr. Van der Laan stated: "the spine x-ray shows disc narrowing at L3-L4, as well as the posterior aspect of L4-5. Changes of DJD are seen involving the L4-5 and L5-S1 facet joints." (Id.) With respect to Blanchette's DJD, under the heading "Treatment," Dr. Van der Laan wrote: "Diagnostic Imaging: X ray: Spines, lumbosacral . . . Lumbar spine and knees together on one report to vdL[7] / I do believe the patient is disabled due

_____

[7] An X-ray report dated December 27, 2007, provides as follows:

KNEES: AP weightbearing, lateral, condylar notch and Merchant's views of both knees dated 12/17/07 are compared with previous exam dated 09/17/02. The study demonstrates no evidence of joint effusion involving either knee. The joint spaces are well maintained. There is minimal spurring at the anticular margins of the patella. There is irregular contour of the medial margin of the right patella which is unchanged in appearance from study dated 9/17/02 and is most likely secondary to old trauma.
IMPRESSION: Minimal changes of degenerative osteoarthritis involving the patellofemoral space.

LUMBAR SPINE: AP and lateral views of the lumbar spine and a lateral coned down view of the LS junction dated 12/17/07 demonstrate normal alignment. There is maintenance of the normal lumbar vertebral height. There is disc space narrowing at the L3-L4 and poster aspect of the L4-L5 disc spaces. There are changes of degenerative osteoarthritis involving the L4-L5 and L5-S1 facet joints. The pedicles appear intact, no

to her advanced djd and poor mobility and ex toler[a]nce." (Tr. at 246-47.) Finally, with respect to Blanchette's irritable bowel syndrome ("IBS"), under the heading "Treatment," Dr. Van der Laan wrote: "the combo of diarrhea and then diarrhea, with cramps relieved in the BR is pretty classic for IBS, and is moderately disabling." (Tr. at 247.)

Blanchette saw Dr. Van der Laan again on February 5, 2008. First on the list of the two chief complaints identified in his progress note is: "Go over disability papers, exam." (Tr. at 241.) The only treatment listed, under the heading "DJD," is this: "reviewed in detail the work list and went over what the pt could and could not do — see the work sheet." (Id.)

In a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" dated February 13, 2008, Dr. Van der Laan opined that Blanchette could: lift up to twenty pounds occasionally (Tr. at 235), carry up to ten pounds occasionally (id.), sit for two hours at a time without interruption and two hours total in an eight-hour work day (Tr. at 236), stand for one hour at a time and one hour in an eight-hour work day (id.), and

---

evidence of a destructive process seen.
IMPRESSION: changes of degenerative osteoarthritis and degenerative disc disease.

(Tr. at 245.)

10

(inconsistently) walk for one hour at a time but only half an hour in an eight-hour work day (id.). Dr. Van der Laan further stated that Blanchette required the use of a cane to ambulate. (Id.) He refined that finding by noting that: Blanchette could walk 100 yards without a cane; the cane was medically necessary; and Blanchette could not use her free hand to carry small objects while walking without a cane. (Id.) Regarding use of hands and feet, Dr. Van der Laan found that Blanchette could never reach overhead or push/pull with either hand, that she could occasionally perform reaching, handling, fingering, and feeling with both hands,[8] and that she could occasionally operate foot controls with both feet. (Tr. at 237.) He further found that Blanchette could occasionally balance and stoop but could never climb stairs, ramps, ladders, or scaffolds; kneel; crouch; or crawl. (Tr. at 238.) He found that Blanchette could never be exposed to unprotected heights, extreme cold, or vibrations, but that she could occasionally be exposed to moving mechanical parts; operating a motor vehicle; humidity and wetness; dusts, odors, fumes and pulmonary irritants; and extreme cold. (Tr. at 239.) Dr. Van der Laan concluded by stating that Blanchette had the ability to shop; travel without a companion; ambulate without

_____

[8] After characterizing Blanchette's ability to use her hands, Dr. Van der Laan checked the box indicating that Blanchette is righthanded. (Tr. at 237.) Two of his progress notes, however, indicate that she is lefthanded, (Tr. at 214, 246), as does claimant herself (Tr. at 125).

11

using a wheelchair, walker, two canes, or two crutches; prepare a simple meal and feed herself; and care for personal hygiene, but stated that she did not have the ability to walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; or sort, handle, or use paper or files.  (Tr. at 240.)  Finally, Dr. Van der Laan opined that the limitations he found had been present since October of 2006.  (Id.)

After a hearing, at which claimant was represented by counsel, the ALJ issued a decision which included the following relevant findings:

3.  The claimant has the following severe impairments:
degenerative disc disease of the lumbar spine and
obesity (20 CFR 404.1520(c)).[9]

. . . .

4.  The claimant does not have an impairment or
combination of impairments that meets or medically
equals one of the listed impairments in 20 CFR Part
404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
404.1525, 404.1526).

. . . .

_____

[9] The ALJ also noted that "[t]he claimant's medically
determinable . . . impairment of asthma, episodic diarrhea and
complaints of depression do not cause more than minimal
limitation in the claimant's ability to perform basic . . . work
activities and are therefore nonsevere."  (Tr. at 10.)

12

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

. . . .

6. The claimant is capable of performing past relevant work as a secretary or as a teacher.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

(Tr. at 9-12.)   The ALJ explained his decision not to give controlling weight to Dr. Van der Laan's assessment of Blanchette's ability to perform work-related activities in the following way:

As for the opinion evidence, the undersigned notes that in February 2008 Dr. Van der laan asserted that the claimant could sit for only 2 hours total during the day, walk for only 1/2 hour total and stand for only 1 hour total.  However, Dr. Van der laan did not provide any medically acceptable laboratory or diagnostic testing or any clinical observations to support such significant restrictions.  While the opinion of a treating physician is afforded controlling weight when it is consistent with the claimant's medical records and not inconsistent with other substantial evidence, Dr. Van der laan has not described any basis for the limitations [he] proposed.  Moreover, [those] limitations are inconsistent with multiple other medical opinions contained in the medical record (20 C.F.R. 404.1527).  In light of evidence that the claimant has remained quite active and has not been described as having severe pain, shortness of breath or other signs of significant illness, the undersigned concludes that she retains the residual functional capacity to perform a full range of light work activity.

(Tr. at 12.)

13

Based upon the foregoing findings, the ALJ ruled that Blanchette was not under a disability from November 10, 2006, through the date of the decision, May 30, 2008.

## Discussion

Blanchette argues that the ALJ's decision should be reversed, and the case remanded, because the ALJ incorrectly determined that she has the capacity to return to her past relevant work.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). The question in this case is whether the ALJ correctly determined that Blanchette was able to return to her past relevant work and, therefore, not under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

14

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a
> disability only if [her] physical or mental impairment
> or impairments are of such severity that [she] is not
> only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> [she] lives, or whether a specific job vacancy exists
> for [her], or whether [she] would be hired if [she]
> applied for work.  For purposes of the preceding
> sentence (with respect to any individual), "work which
> exists in the national economy" means work which exists
> in significant numbers either in the region where such
> individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 U.S.C. §§ 404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform past
> relevant work, then the application is denied; 5) if
> the [claimant], given his or her residual functional
> capacity, education, work experience, and age, is
> unable to do any other work, the application is
> granted.

15

<u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 1520).

The claimant bears the burden of proving that she is disabled. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. <u>See</u> <u>Mandziej v. Chater</u>, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). Finally,

> In assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) plaintiff's subjective claims of pain and disability as supported by the testimony of the plaintiff or other witness; and (3) the plaintiff's educational background, age, and work experience.

<u>Mandziej</u>, 944 F. Supp. at 129 (citing <u>Avery v. Sec'y of HHS</u>, 797 F.2d 19, 23 (1st Cir. 1986); <u>Goodermote v. Sec'y of HHS</u>, 690 F.2d 5, 6 (1st Cir. 1982)).

Claimant makes nine separate arguments against the validity of the ALJ's step-four determination. Those arguments fall into two categories: (1) challenges to the ALJ's determination of her residual functional capacity ("RFC"); and (2) challenges to the ALJ's characterization of her past relevant work ("PRW").

16

A. Residual Functional Capacity

Claimant argues that the ALJ erred in determining that she has a residual functional capacity for a full range of light work because he: (1) did not give controlling weight to her treating physician's opinion; (2) did not obtain an RFC assessment from an examining physician; (3) relied on an incomplete RFC assessment; (4) mischaracterized the medical record; (5) failed to make inquiries into her claims of disabling pain; and (6) did not consider her good work record as evidence of her credibility.

1. Treating Source Opinion

Claimant argues that the ALJ erroneously dismissed her treating source's opinion that she "could sit for only 2 hours total during the day, walk for only 1/2 hour total and stand for only 1 hour total."  (Tr. at 12.)

Under the relevant regulations, "[i]f any of the evidence . . . including any medical opinion(s), is inconsistent with other evidence . . . [the Commissioner] will weigh all of the evidence and see whether [he] can decide whether [a claimant] is disabled."  20 C.F.R. § 404.1527(c)(2).  When weighing medical opinions, the Commissioner will "[g]enerally . . . give more weight to opinions from . . . treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's]

17

medical impairment(s) and may bring a unique perspective to the medical evidence . . ." § 404.1527(d)(2). Moreover, "[i]f [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." Id. When determining whether to give controlling weight to the opinion of a treating source, the Commissioner considers a number of factors, including the "[l]ength of the treating relationship and the frequency of examination," § 404.1527(d)(2)(I), the "[n]ature and extent of the treatment relationship," § 404.1527(d)(2)(ii), supportability, § 404.1527(d)(3), and consistency with the record as a whole, § 404.1527(d)(4).

Here, the ALJ correctly determined that Dr. Van der Laan's opinion was inconsistent with those of Drs. Nault and Gupta. That supports the ALJ's decision to diminish the weight he gave Dr. Van der Laan's opinion. See 20 C.F.R. § 404 1527(d)(4).

Likewise, the court cannot say that the ALJ erred in determining that Dr. Van der Laan's opinion was not sufficiently supported by medically acceptable laboratory or diagnostic testing or by clinical observations. The medical record includes

18

an X-ray report and an MRI report, which the ALJ noted in his decision. (Tr. at 10.) But, as the ALJ also noted, the February, 2007, X-ray report was essentially normal, and the December, 2007, MRI report indicated minimal abnormalities in claimant's knees and, at worst, only moderate abnormalities in her lumbar spine. (Id.) Moreover, none of Dr. Van der Laan's progress notes indicate that he ever suggested treatment of any sort other than diagnostic testing and counseling on diet and exercise. (Tr. at 200, 214-15, 241, 246-47). That Dr. Van der Laan prescribed no treatment for claimant's back disorder further supports the ALJ's determination that the limitations Dr. Van der Laan ascribed to that condition were not adequately supported by medical evidence. See 20 C.F.R. § 404.1527(d)(2)(ii) ("Generally, the more knowledge a treating source as about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided . . .") (emphasis added).

Finally, none of the purported medical opinions identified in the final paragraph of page five of claimant's memorandum are actually medical opinions at all. The first two, concerning claimant's ability to walk and to carry objects, are Dr. Van der Laan's reports of claimant's complaints. That is, those notations describe claimant's symptoms, not Dr. Van der Laan's assessments of, or judgments about, her physical condition. See

19

20 C.F.R. § 404.1527(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s) . . . ."); § 1528(a) ("Symptoms are [a claimant's] own description of [her] physical or mental impairment. [Such] statements alone are not enough to establish that there is a physical or mental impairment."). The third purported medical opinion, Dr. Van der Laan's statement that claimant is disabled, is also not a medical opinion because it is an opinion on an issue reserved to the Commissioner. See 20 C.F.R. § 404.1527(e). Because none of the asserted medical opinions claimant charges the ALJ with dismissing are actual medical opinions, as that term is used in the Social Security regulations, the ALJ committed no error in failing to give them controlling weight.

The ALJ's decision not to grant controlling weight to Dr. Van der Laan's opinion is supported by two other considerations. First, there are a host of internal inconsistencies in Dr. Van der Laan's records. For example, he described claimant as both lefthanded (Tr. at 214, 246) and righthanded (Tr. at 237). In the "Review of Systems" section of one treatment note, he entered "shortness of breath  no" under ENT/RESPIRATORY, while, ten lines down, he listed "shortness of breath  yes" under CARDIOLOGY. (Tr. at 215.) And, as noted above, in his functional capacity assessment, Dr. Van der Laan characterized claimant as able to

20

walk for one hour at a time, but only half an hour in an eight-hour work day. (Tr. at 236.) To be sure, those inconsistencies are only modestly troubling individually, but, collectively, they do tend to undermine the reliability of Dr. Van der Laan's substantive opinions.

Moreover, Dr. Van der Laan's treating relationship with claimant falls toward the low end of the spectrum established by 20 C.F.R. §§ 1527(d)(2)(I) & (ii). The record shows that claimant visited Dr. Van der Laan four times between October of 2006 and January of 2008. In the progress note resulting from claimant's first visit, Dr. Van der Laan suggested follow up in six months. (Tr. at 200.) Claimant returned approximately four months later, shortly after Dr. Nault completed his unfavorable RFC assessment, and first on Dr. Van der Laan's list of chief complaints is "DISCUSS DISABILITY." (Tr. at 214.) In the progress note resulting from claimant's visit in February of 2007, Dr. Van der Laan suggested follow up in three months. (Tr. at 215.) Claimant did not return for another ten months, suggesting something less than a pressing need for medical treatment. In the progress note resulting from that visit, Dr. Van der Laan again began his listing of chief complaints with references to Blanchette's disability claim. (Tr. at 246.) As noted above, Dr. Van der Laan never prescribed medication, physical therapy, surgery, or any other treatment for any of

21

claimant's medical conditions, including her back disorder. In all, the picture emerges of a physician with whom claimant consulted in order to establish a disability claim rather than a physician who was providing medical treatment.[10] That, too, provides a basis for declining to give controlling weight to Dr. Van der Laan's opinions.

In sum, the ALJ's decision not to grant controlling weight to Dr. Van der Laan's opinion provides no ground for reversal or remand.

2. Examining Physician RFC Assessment

Claimant argues that the ALJ violated established First Circuit precedent by failing to obtain an RFC assessment from an examining physician.

Claimant cites Heggarty v. Sullivan, 947 F.2d 990 (1st Cir. 1991), for the proposition that "when a claimant shows some objective symptoms of a medically determinable impairment/s the Commissioner is required to obtain a residual functional capacity (RFC) assessment from an examining physician." Both claimant and

_____

[10] In the progress notes for each of claimant's four visits with Dr. Van der Laan, her list of chief complaints was headed not by a medical concern, but with one or more issues related to securing insurance coverage or disability benefits. (Tr. at 199, 214, 241, 246.)

22

the Commissioner cite district court cases interpreting <u>Heggarty</u> that support their contrary views that that case did, <u>see</u> <u>Morales Colón v. Comm'r of SSA</u>, 245 F. Supp. 2d 395, 399-401 (D.P.R. 2003), or did not, <u>see</u> <u>Delgado-Quiles v. Comm'r of SSA</u>, 381 F. Supp. 2d 5, 9 (D.P.R. 2005), require the ALJ to obtain an examining source RFC assessment.

The Commissioner has the better argument. In <u>Heggarty</u>, the claimant had a treating physician who saw him once every two weeks. 947 F.2d at 992. But, the record before the ALJ in that case contained nothing from the treating physician. <u>Id.</u> In addition, the claimant in <u>Heggarty</u> was seen by an examining physician, but that physician did not complete an RFC assessment. <u>Id.</u> at 993. In the face of that record, the court of appeals remanded with instructions that the Secretary of Health and Human Services obtain medical reports from the claimant's treating physician. <u>Id.</u> at 997. Regarding the lack of an RFC assessment from the examining physician, the court of appeals wrote, in a footnote:

> We note that the examining consultant did not fill out an RFC, a practice we already have criticized. <u>See</u> <u>Rivera-Torres v. Secretary of Health and Human Services</u>, 837 F.2d 4, 6 (1st Cir. 1988) (per curiam) (the Secretary should have a consulting doctor complete an RFC).

<u>Heggarty</u>, 947 F.2d at 997 n.1. Two points stand out.

23

First, Heggarty was remanded not for lack of an RFC assessment from an examining physician, but for lack of medical records from a treating physician. Here, of course, the ALJ had both treating-source medical records and a treating-source RFC assessment. More importantly, both Heggarty and Rivera-Torres are cases, unlike this one, in which the claimant had, in fact, been seen by an examining physician. See Heggarty, 947 F.2d at 993; Rivera-Torres, 837 F.2d at 6. Thus, the criticism of the ALJs in those cases was not that they failed to order an examination, but that they failed to obtain reports from physicians who had conducted consultative examinations. Accordingly, Heggarty provides no basis for reversing the ALJ in this case. Unlike the ALJ in Heggarty, who lacked both treating-source medical records and a treating-source RFC assessment, the ALJ in this case had both. While Heggarty stands for the proposition that an ALJ should obtain an RFC assessment from a physician who has conducted a consultative examination, it does not require an ALJ to order such an examination, especially where, as here, the record also includes treating-source medical records and opinions.

### 3. Reliance on an Incomplete RFC Assessment

Claimant next argues that the ALJ's determination that she was capable of performing her past secretarial work was not supported by substantial evidence because secretarial work

24

requires frequent reaching, handling, and fingering, and Dr. Gupta found her capable of the full range of light work, without completing the portion of the medical source statement form that pertains to use of the hands, including reaching, handling, and fingering.

The ALJ's decision on this issue was supported by substantial evidence. While it is true that Dr. Gupta did not fill out that part of the medical source statement form pertaining to use of the hands, which addresses reaching, handling, fingering, feeling, and pushing/pulling (Tr. at 230), he did state that claimant retained the residual functional capacity to sort, handle, and use paper and files (Tr. at 233). That opinion presupposes a predicate opinion that claimant had the capacity to perform reaching, handling, and fingering. Moreover, Dr. Nault, the other non-examining physician, opined in his RFC assessment that the record established no manipulative limitations, i.e., limitations on reaching, handling, fingering, and feeling. (Tr. at 209.) Dr. Van der Laan offered a contrary opinion regarding claimant's ability to use her hands, (see Tr. at 237), but it is well established that "the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769 (citations omitted).

## 4. Characterization of the Medical Record

Claimant identifies three factual findings by the ALJ which, in her view, are refuted by her medical records. She then argues that because the ALJ's decision rests on those assertedly unsupported factual findings, his determination of her RFC is not supported by substantial evidence and must be reversed.

### a. Irritable Bowel

Claimant argues that the ALJ erred in his finding that "[s]he has never described severe episodes of irritable bowel syndrome to a treating or examining source . . ." (Tr. at 12.) She points to a progress note in which Dr. Van der Laan discussed her irritable bowel syndrome (see Tr. at 247), and argues that if he mentioned her IBS, she, necessarily, described her IBS symptoms to him. On that basis, claimant contends that "the Decision's statement that [she] never described symptoms of IBS to a treating source is inaccurate and not supported by substantial evidence." The Commissioner points out, correctly, that the ALJ did not say that claimant never described symptoms of IBS, but only that she never described "severe episodes," and counters that the ALJ's finding is supported by substantial evidence because the medical record does not, in fact, contain any reports by claimant of "severe episodes of irritable bowel syndrome." This is a dispute over semantics, and what is or is not a "severe" episode of IBS. It is not a dispute about an

26

unsupported factual finding by the ALJ sufficient to require reversal of his decision.

### b. Severe Pain, Shortness of Breath, Etc.

Claimant also argues that the ALJ erred by finding that she "has not been described as having severe pain, shortness of breath or other signs of significant illness." (Tr. at 12.) The problem with claimant's argument, however, is that the various descriptions of her physical condition to which she refers are not medical observations but, rather, Dr. Van der Laan's reports of her own complaints to him regarding her symptoms. See 20 C.F.R. § 1528(a). The point of the ALJ's statement was that no medical source has described her as having severe pain or shortness of breath. That is accurate.

To take the example of shortness of breath, Dr. Van der Laan's February 7, 2007, progress note says both "shortness of breath no" and "shortness of breath yes" under separate subheadings of the general heading "Review of Systems." (Tr. at 215.) But, under the heading "Physical Examination," subheading "Chest," Dr. Van der Laan reports: "Shape and expansion: normal. Breath sounds: normal. Percussion: normal. Rales: no. Wheezes: no." (Id.) Similarly, Dr. Van der Laan's February 5, 2008, progress note reports, under Review of Symptoms: "shortness of breath yes, worse with exertion, relieved with rest, gradually

27

getting worse, associated with wheeze," (Tr. at 242), but also reports, under Physical Examination: "CHEST: / Shape and expansion: normal. Breath sounds: normal. Percussion: normal. Rales: no. Wheezes: no." (Tr. at 241.) In other words, Dr. Van der Laan reported both claimant's complaints of shortness of breath and the results of his physical examination. But, only the former contain descriptions of shortness of breath. Thus, the ALJ's finding was supported by substantial evidence. Dr. Van der Laan did not clinically describe claimant as suffering from shortness of breath. And, again, a claimant's own description of a physical impairment, by itself, is insufficient to establish the existence of such an impairment. See 20 C.F.R. § 404.1528(a).

### c. Use of a Cane

Claimant also argues that the ALJ erred by finding that "[i]n terms of the claimant's alleged need for a cane to ambulate, [the] medical record contains no evidence that this has been prescribed." (Tr. at 12.) Dr. Van der Laan gave his opinion that claimant's cane was "medically necessary," (Tr. at 236), after she started using it, seemingly on her own. But, there is no evidence that he, or any other physician, prescribed its use. Thus, the ALJ's finding is supported by substantial evidence. Whether or not the lack of a prescription for the cane is significant is another question; here, all that is at issue is

28

the ALJ's finding that the cane was not prescribed, and that finding is adequately supported.

5. Failure to Inquire

In reliance on Corchado v. Shalala, 953 F. Supp. 12, 15-16 (D. Mass. 1996), claimant argues that the ALJ violated "established First Circuit authority" by failing to solicit information from her, at her hearing, concerning the effects of pain on her activities of daily living. The Commissioner counters that an ALJ is not required to re-question a claimant on issues covered in questioning by her own attorney and that, in any event, claimant does not suggest any question the ALJ could have asked that would have produced information not already available in the record.

According to Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A.), "an individual's statement(s) about his or her symptoms[11] is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled." Id. at *2. When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id., are alleged, SSR 96-7p prescribes a two-step evaluation process:

_____

[11] "A symptom is an individual's own description of his or her physical or mental impairment(s)." SSR 96-7p, 1996 WL 374186, at *2.

29

* First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms. . . . If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

* Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Id. Furthermore:

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

30

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *3.


In claimant's view, this case should be remanded because the ALJ did not question her about the seven factors listed in SSR 96-7p. However, she was represented by counsel, and "when [a] claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997); see also Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988) ("an ALJ is entitled to

31

presume that a claimant represented by counsel in the administrative hearings has made [her] best case").

Moreover, the SSR 96-7p factors were adequately addressed in claimant's testimony before the ALJ, and the medical records provided further information on several of them.[12]  Furthermore, as the Commissioner points out, claimant does not say what more the ALJ would have learned from the questioning she says should have been conducted.  See Nelson v. Apfel, 131 F.3d 1228, 1235 (7th Cir. 1997 ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant remand.") (citation omitted); Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"); Born v. Sec'y of HHS, 923 F.2d 1168, 1172 (6th Cir. 1990) (noting, in decision affirming determination of non-disability over argument that ALJ failed to properly develop the record, that "claimant . . . failed to suggest what other information could have been brought forth by further questioning

---

[12] The existence of sufficient evidentiary support in the administrative record for the ALJ's credibility determination would appear to distinguish this case from Corchado, 935 F. Supp. 12, on which claimant relies.  Corchado was remanded for further development of the record, in order to allow the ALJ to make a proper inquiry under the principles established in Avery, 797 F.2d 19.  But where, as here, the record adequately supports the ALJ's credibility determination, notwithstanding the lack of an Avery colloquy at the hearing, there are no grounds for remanding the case for further proceedings before the ALJ.

of him which would have enhanced a determination of disability").

In sum, the ALJ's credibility determination is supported by substantial evidence in the record that directly addressed the SSR 96-7p factors.

6. Claimant's Good Work Record as Evidence of Credibility

Claimant's final argument concerning the ALJ's RFC determination is that this court should adopt a rule from the Second Circuit under which "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (citing Singletary v. Sec'y of HEW, 623 F.2d 217, 219 (2d Cir. 1980)); see also Burnside v. Apfel, 223 F.3d 840, 845 (8th Cir. 2000) ("A consistent work record may support the credibility of a claimant's subjective complaints.") (citing Singh v. Apfel, 217 F.3d 586 (8th Cir. 2000)).  To demonstrate that her case merits application of the Rivera rule, claimant lists her annual earnings from 1988 through 2006, as evidence of her "excellent work record over the 19 years prior to 2007."  The Commissioner points out that claimant "cites no First Circuit case law accepting the proposition that cessation of work, due to retirement following a long working career, is a factor that is entitled to great weight when weighing a claimant's credibility."

33

In <u>Singletary</u>, on which the <u>Rivera</u> court relied, the court of appeals explained:

> Mr. Singletary does show a life history of hard labor performed under demanding conditions over long hours. His work record shows employment by nationally known racing stables. These animals, both trotters and pacers, are very valuable. Their care is not entrusted to malingerers or goldbricks. His prior work history justifies the inference that when he stopped working he did so for the reasons testified to.

<u>Singletary</u>, 623 F.2d at 219. Here, of course, claimant does not contend that she stopped working because of her disability. She left her position as a high-school attendance secretary in June of 2006, continued working for her husband's business for another five months, and claims an onset date of November 10, 2006. In other words, she says she became disabled five months after she stopped working as an attendance secretary. Because claimant does not contend that she stopped working because of her disability, the ALJ in this case did not have to determine why claimant left her last job, which is the question that motivated the <u>Singletary</u> court to take the claimant's work record into account. The lack of any question concerning claimant's reasons for leaving her job as an attendance secretary distinguishes this case from <u>Singletary</u>, and diminishes the relevance of claimant's work record. A good work record is certainly inconsistent with goldbricking, but is hardly inconsistent with retirement, which

34

is how claimant characterized her departure from her job as an attendance secretary. (See Tr. at 200, 214, 242, 247.)


B. Past Relevant Work

Claimant argues that the ALJ erred with regard to her past relevant work by: (1) relying on vocational expert testimony that misidentified her prior relevant work (claimant's argument vii); (2) determining that she had the capacity to perform a job, i.e., teacher, that she never held (argument v); and (3) failing to give her past relevant work the consideration it was due under Rams v. Chater, 989 F. Supp. 309 (D. Mass. 1997) (argument iv). The Commissioner counters by: (1) arguing that the vocational expert's asserted misidentification of claimant's past relevant work was insignificant because the job title claimant says the expert should have used has the same mental and physical requirements as the ones the expert did use; (2) conceding that claimant's past relevant work was not as a teacher or teacher's aide; and (3) distinguishing Rams.


As noted above, the ALJ determined that claimant retained the residual functional capacity to perform her past relevant work. In support of that finding, he wrote:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work [i.e., "past relevant work as a secretary or as a teacher"], the undersigned finds that the claimant is

35

> able to perform it as generally performed consistent
> with Vocational Consultant Christine Spaulding's
> opinion contained in the record . . . .

(Tr. at 12.)  Christine Spaulding was presented with a hypothetical question based on Dr. Nault's RFC assessment and claimant's description of her past relevant work as recorded on the Form SSA-3368 ("Disability Report – Adult") she filed with the SSA.  (Tr. at 98-100.)  In her Disability Report, claimant stated that she worked from February of 1986 through June of 2006 under the job title "secretary/substitute teacher."  (Tr. at 99.) After comparing Dr. Nault's RFC assessment with claimant's own description of her job as a secretary/substitute teacher, Spaulding gave the following answer to a hypothetical question concerning claimant's ability to perform her past relevant work:

> Yes, this individual would be able to perform her PRW
> of Secretary (DOT 201.362-030, SVP 6, Strength:
> Sedentary) and Teacher Aide/Substitute Teacher (DOT
> 249.367-074, SVP 3, Strength: Light) as they were
> performed and as they are typically performed in the
> national economy.

(Tr. at 142.)

Claimant argues that the ALJ committed two legal errors: (1) relying on vocational information she calls "erroneous" because the vocational expert addressed her ability to perform work as a "secretary" and "teacher aide/substitute teacher" rather than "school secretary," and (2) referring to her past relevant work

36

as "teacher." Claimant's argument is unavailing. The vocational expert considered the job requirements for "secretary" and "substitute teacher" because those were the terms claimant herself entered under the heading "Job Title" in Section 3 of her SSA-3368 form. (Tr. at 99.) Thus, Spaulding's opinion contained no "erroneous vocational information," and it was hardly a legal error for the ALJ to rely on an opinion in which the vocational expert characterized claimant's past relevant work in exactly the terms claimant herself used. The ALJ's reference to claimant's past relevant work as "teacher" is also rooted in the information claimant gave to the SSA and, therefore, provides no ground for reversal.

In a Form SSA-3369-BK ("Work History Report") that claimant appears to have filed some time after she filed the SSA-3368 on which the vocational expert relied, she used the terms "School Secretary" and "Attendance Secretary," and listed those as two separate jobs rather than a single job, as she had in her SSA-3368. (Tr. at 129.) In other words, claimant described her past work differently in the Work History Report than she did in the Disability Report.[13] But, even if the vocational expert and the

_____

[13] In addition to dividing claimant's work for schools into two different job titles, with different "dates worked," the Work History Report includes the first report that any of claimant's past relevant work involved lifting weights of more than ten pounds. (Tr. at 99, 130.)

37

ALJ had erred in their characterizations of claimant's past relevant work – and they did not – claimant has not identified any way in which she was prejudiced by any such error, given the substantial similarity of the job requirements for "secretary" and "school secretary." See EMPLOYMENT & TRAINING ADMIN., U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES 171 (4th ed. rev. 1991).

Claimant's final argument is that the ALJ failed to conduct an adequate particularized inquiry into the demands of her past relevant work. As an example, she notes that the ALJ found her capable of performing her PRW, even though her Work History Report indicated that when she worked as a school secretary, she was sometimes required to lift up to fifty pounds, a requirement plainly precluded by the RFC limitations the ALJ found. Claimant's argument misses several key points.

First, the ALJ expressly referred to the vocational expert's opinion, and the vocational expert expressly described all the demands of claimant's past relevant work, as claimant reported them in her SSA-3368 form. Regarding the exertional requirements of claimant's PRW, she indicated in her Disability Report that as a secretary/substitute teacher, she never had to lift more than ten pounds. The occasional lifting of up to fifty pounds first entered the record in Claimant's subsequent Work History Report, but even then, only in the context of the school secretary job

38

claimant left in June of 2004.  According to that same report, when she worked as an attendance secretary, from September of 2004 through June of 2006, the heaviest weight she lifted was less than ten pounds, an exertional requirement plainly in line with her RFC.  Thus, no additional inquiry was necessary for the ALJ to make an adequately supported finding that claimant retained the RFC to perform her past relevant work as a high-school attendance secretary.

Finally, claimant's reliance on Rams is misplaced for several reasons.  To begin, in this case, the Commissioner does not advance either of the two arguments that were offered in Rams to support the ALJ's step-four determination but rejected by the court.[14]  Beyond that, Rams is factually distinguishable.  The ALJ in Rams made no finding concerning the claimant's RFC, see 989 F. Supp. at 311-12, 319, which precluded her from properly comparing the claimant's RFC to the demands of her past relevant

_____

[14] Those discredited arguments were: (1) "that the [claimant's] ability to perform her past job for very short periods at any given time, or 'on a part-time basis,' constitute, as a matter of law, a step-four determination supported by substantial evidence that plaintiff can perform her past relevant work," 989 F. Supp. at 318, and (2) "that [an] RFC evaluation [by a non-examining state agency physician] and [an consultative examiner's] observations are substantial evidence that supports a determination that plaintiff is able to perform 'medium' work, and that, because her past work would constitute 'medium' work under the regulations, [claimant] was able to perform her past relevant work," id. at 319.

work, see id. at 319-20. Moreover, the ALJ in Rams appears not to have had the benefit of the opinion of a vocational expert. Here, by contrast, the ALJ did make a finding concerning claimant's RFC. And, after considering the vocational expert's opinion, which incorporated claimant's description of her past relevant work, the ALJ determined that claimant's RFC did not preclude her from performing her PRW. In other words, the ALJ in this case met his obligation to "determine the claimant's residual functional capacity (RFC) and the physical and mental demands of the work that the claimant has done in the past." Id. at 318 (citing 20 C.F.R. § 404.1520(e); Santiago v. Sec'y of HHS, 944 F.2d 1, 5 (1st Cir. 1991)). In short, there is nothing in Rams that would justify remanding this case.

## Conclusion

For the reasons given, claimant's motion to reverse and remand (document no. 7) is denied, and the Commissioner's motion for an order affirming the ALJ's decision (document no. 9) is granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

June 9, 2009

40

cc:   David J. Strange, Esq.
      Gretchen L. Witt, Esq.